**David CRAWLEY; Elwood H. Jones; Larry Smith; Frank Bracey, Plaintiffs-Appellants,**

v.

**HAMILTON COUNTY COMMISSIONERS; Sheriff Lincoln Stokes; Warden William Whitworth, Defendants-Appellees.**

No. 84–3121.

United States Court of Appeals, Sixth Circuit.

Aug. 3, 1984.

Decided Sept. 20, 1984.

Stephen Olden (argued), Michael O'Hara, John E. Schrider, Jr., Legal Aid Society of Cincinnati, Marc D. Mezibov, Cincinnati, Ohio, for plaintiffs-appellants.

Roger E. Friedmann, Arthur M. Ney, Jr., Brian E. Hurley (argued), Cincinnati, Ohio, for defendants-appellees.

Before EDWARDS and MARTIN, Circuit Judges; and SILER, District Judge.[*]

BOYCE F. MARTIN, Jr., Circuit Judge.

The plaintiffs, inmates at the Community Correctional Institution in Cincinnati, Ohio, appeal the district court's dismissal of their 42 U.S.C. § 1983 lawsuit challenging the conditions of their confinement. The court dismissed the case in deference to what it considered to be a parallel, state-court proceeding.

The inmates at CCI first filed suit against the operators of the jail challenging their conditions of confinement under the eighth and fourteenth amendments in March of 1972. The case was filed in the Hamilton County Court of Common Pleas. The trial was completed in the summer of 1972 but a decision was not handed down until October 12, 1976. The court did de-

[*] Honorable Eugene E. Siler, Jr., United States District Judge for the Eastern and Western Districts of Kentucky, sitting by designation.

cide in favor of the plaintiffs, finding numerous violations of their constitutional rights. The trial judge issued seventy-nine interim orders requiring defendants to improve the facility. He also ordered that the facility should be closed within two years of his decision. *Kahles v. Luken,* No. A–722034. The decision was affirmed on appeal to the Court of Appeals for the First Appellate District of Ohio on August 18, 1978. On October 5, 1978, the trial judge extended his closure order until the opening of a new correctional facility by Hamilton County which was then in the planning stages. At that same time, the court also found that Cincinnati officials were in contempt of court for not complying with his 1976 judgment. Nevertheless, no sanctions were imposed. In 1979, the inmates filed a second contempt motion against the City. That motion was eventually settled on December 23, 1980. On August 15, 1981, Cincinnati turned over complete operation of CCI to Hamilton County, Ohio. On August 20, 1981, the City filed its final compliance report with the Court and asked that the case be dismissed. There have been no further proceedings in the *Kahles* case, other than the filing of a motion by the plaintiffs to dismiss the case and by Hamilton County officials to be substituted as defendants in the case.

The current proceeding was begun in May and June, 1982, when three inmates filed *pro se* complaints against Hamilton County officials challenging their conditions of confinement at CCI. Subsequently, the cases were consolidated for trial, counsel appointed, an amended complaint filed, and a motion for class certification made. On July 19, 1983, the defendants filed their motion to dismiss based on comity and abstention grounds. While awaiting a decision on that motion, the parties prepared for trial in earnest. A status conference was held in October at which time a hearing on plaintiffs' motion for a preliminary injunction was set for January 9, 1984. On December 27, 1983, the magistrate recommended that defendant's motion to dismiss be granted, based on the abstention doctrine of *Younger v. Harris,* 401

U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and on the "judicial economy" doctrine of *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The magistrate's recommendation was adopted by the district judge on January 19, 1984. Because we do not believe that either *Younger* or *Colorado River* allows dismissal, we reverse.

■ *Younger v. Harris* established that federal courts should abstain from entertaining lawsuits by individuals seeking to enjoin a criminal prosecution against them in state court. The *Younger* holding has been extended to certain civil proceedings. *See, e.g., Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (contempt proceedings); *Middlesex County Ethics Comm. v. Garden,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (state bar disciplinary proceedings). However, *Younger* and its progeny all have a procedural posture which is very different from our case. In the typical *Younger* case, the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of those state proceedings. Moreover, the basis for the federal relief claimed is generally available to the would-be federal plaintiff as a defense in the state proceedings. *See L.H. v. Jameison,* 643 F.2d 1351, 1532–53 (9th Cir.1981). In our case, the federal plaintiffs are also *plaintiffs* in the state court action. In addition, the plaintiffs are not attempting to use the federal courts to shield them from state court enforcement efforts. Accordingly, there is no basis for *Younger* abstention in this case.

If abstention is not appropriate, the County argues that the district court was still entitled to dismiss the case under the doctrine enunciated in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In that case, the Court held that "considerations of 'wise judicial administration, giving regard to conservation of judicial resources,'" created a narrow exception to the "virtually unflagging

obligation of the federal courts to exercise the jurisdiction given them." *Id.* at 817, 96 S.Ct. at 1246. The Court was careful to note that "[o]nly the clearest of justifications will warrant dismissal." *Id.* at 819, 96 S.Ct. at 1247.

The holding in *Colorado River* was clarified in the recent case of *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In *Moses*, the Court listed five factors to be considered when deciding whether to dismiss a federal claim in deference to a parallel, state-court proceeding: (1) whether federal or state law provides the basis for decision of the case, *id.* 103 S.Ct. at 941; (2) whether either court has assumed jurisdiction over any *res* or property; (3) whether the federal forum is less convenient to the parties; (4) avoidance of piecemeal litigation; and (5) the order in which jurisdiction was obtained. *Id.* at 937. "No one factor is necessarily determinative" and there is to be "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighed in favor of the exercise of jurisdiction." *Id.* Other factors may also be considered, particularly the progress that has been made in each of the two actions. *Id.* at 940.

■ A necessary requirement for application of this *Colorado River* doctrine, however, is the presence of a *parallel*, state proceeding. In our case, there is no such proceeding. In *Kahles* little, if any, action has been taken since December 23, 1980 when the second contempt proceeding against Cincinnati officials was settled. Moreover, the parties in *Kahles* are different. The defendants in that case are Cincinnati officials. The defendants here are officials of Hamilton County. The claims involved are also different. *Kahles* never addressed the issues of overcrowding or use of mace, shackles, and blackjacks, all of which are present in this case. Finally the state proceeding concerns only events prior to August 15, 1981, while the federal proceeding involves only events occurring after that date. While it may be true, as the County maintains, that *Kahles could* be modified so as to make it identical to the current federal claim, that is not the issue here. The issue is whether *Kahles*, as it *currently* exists, *is* a parallel, state-court proceeding. Because it is not, we need not undertake the five-factor analyses called for in *Moses H. Cone Memorial Hospital.*

■ Even if we were to undertake such an analysis, we would still find that dismissal of this lawsuit was not appropriate. First and foremost, this is a case in which federal law is clearly dispositive on the merits. In fact, this Court has already said that this type of institutional lawsuit is the kind of case that should be litigated in a federal forum. *See Hanna v. Toner*, 630 F.2d 442, 444 (6th Cir.1980). Second, the state court in *Kahles* never assumed jurisdiction over any *res* or property. Although the state court's orders had important effects on the jail itself, the orders were directed to the responsible operating official. This was strictly an *in personam* action. Moreover, the cases relied upon by the Court in *Colorado River* for the *res* exception all dealt with the *disposition* of property, such as a trust. *See, e.g., Princess Lida v. Thompson*, 305 U.S. 456, 466, 59 S.Ct. 275, 280, 83 L.Ed. 285 (1939); *United States v. Bank of New York & Trust Co.*, 296 U.S. 463, 477, 56 S.Ct. 343, 347, 80 L.Ed. 331 (1936). The trial judge in *Kahles* was not in the least bit concerned with the ultimate disposition of the jail, only with how it was used in the housing of inmates.

Third, the federal forum is just as convenient as the state forum. Fourth, there is no danger of piecemeal litigation. All the current claims of inmates at CCI will be resolved. And fifth, even though the state claim was filed first, consideration of one of the additional factors mentioned in *Moses*, namely the progress made in each of the two actions, argues against deferral to the state court action. The issues in dispute in the federal action all involve conditions at CCI after August 15, 1981. All of the discovery regarding those conditions had been completed and a preliminary in-

junction hearing was only two weeks away when the defendant's motion to dismiss was granted. Much of that work would have to be duplicated if the inmates were sent back to state court. Clearly, then, a *Colorado River* dismissal for judicial economy is inappropriate in this case. We also believe that a stay of the federal proceedings pending final resolution of the *Kahles* case would also be unacceptable. As *Moses H. Cone Memorial Hospital* makes clear, "a stay is as much a refusal to exercise federal jurisdiction as a dismissal." *Moses*, 103 S.Ct. at 943.

Accordingly, the decision of the district court is reversed and the case remanded for a prompt resumption of proceedings not inconsistent with this opinion.