INRECON, LLC, a Michigan Limited
Liability Company, Plaintiff,

v.

THE HIGHLANDS INSURANCE
COMPANY, an Iowa Corpo-
ration, Defendant.

No. 02–CV–71406–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 23, 2003.

Eric A. Linden, Esq., Detroit, for plaintiff.

Charles R. Tuffley, Esq., Southfield, for defendant.

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

ROSEN, District Judge.

## I. INTRODUCTION

This breach of contract action is presently before the Court on Defendant Highlands Insurance Company's pre-discovery Motion to Dismiss Plaintiff's Complaint on *Colorado River* abstention grounds and for Plaintiff's alleged failure to join a necessary and indispensably party.[1] Having reviewed and considered the parties' briefs, the Court has determined that oral argument is not necessary and, therefore, pursuant to Local Rule Local Court Rule 7.1(e)(2), Defendant's Motion will be decided "on the briefs."

For the reasons stated below, Defendant's Motion to Dismiss will be denied.

## II. PERTINENT FACTS

This action arises out of a fire insurance policy issued by Defendant Highlands Insurance Company ("Highlands") to Westage at the Harbor Condominiums ("Westage"), a condominium association consisting of approximately 16 buildings with 164 residential units located in Rochester, New York. Highlands is an Iowa corporation with its principal place of business in Des Moines, Iowa. The insurance policy covering the condominiums ran from September 21, 1998 through September 21, 1999. The Don Allen Agency, Inc. was the insurance agent/bro-

---

1. Since the filing of Defendant's motion, the parties engaged in substantial discovery. Discovery closed on August 22, 2003 and the dispositive motion cut-off is set for September 26, 2003.

ker that procured the Highlands fire insurance policy on behalf of Westage. The Don Allen Agency is a New York corporation.[2]

On August 30, 1999, a fire occurred at the Westage condominiums damaging buildings "600" and "700". Westage hired Inrecon, a Michigan limited liability company, as a general contractor to repair the fire damage and submitted a claim to Highlands pursuant to the policy.

Highlands paid Westage $1,279,144.96 on the claim. Because Westage claims that the damage it suffered was substantially greater than the sum paid to it by the insurer, Westage was unable to pay Inrecon the full amount owed to it for the repair work. Westage contended that it was entitled to additional sums under the policy totaling approximately $1.5 million, and to recover this additional amount, filed an action in New York state court against both the Highlands Insurance Company and the Don Allen Agency.

The New York state action suit alleged four separate claims. In the first count, Westage alleged a breach of insurance contract claim against the Highlands based on the insurance company's refusal to pay the additional $1.5 million which it contended was the remaining amount of unpaid damages to buildings 600 and 700 as a result of the fire. [*See* Defendant's Ex. A, pp. 3–4.] The second, third and fourth causes of action in the state court complaint assert claims sounding in tort and breach of contract against the Don Allen Agency, only, alleging breach of its duty to advise or direct the plaintiffs to obtain additional coverage which would have covered the expense of required municipal code upgrades the costs of which allegedly caused

Westage to incur an additional $700,000 in damages. *Id.* pp. 4–7.

Inrecon was not a party to the New York state court action. Westage, however, was unable to pay Inrecon for all of the work it did without the insurance proceeds it believed it was entitled to under the Highlands insurance policy. Therefore, approximately 3 ½ months after the commencement of the state suit, on September 28, 2001, Inrecon and Westage entered into an Agreement pursuant to which Westage assigned to Inrecon the right to seek directly from Highlands that portion of damages and losses from the fire relating to the "Reconstruction Claim" asserted by Westage in the New York action. The definition of the "Reconstruction Claim" set forth in the Agreement makes clear that this claim is the claim that Westage had set forth in count 1 of the New York state court action. Specifically, "Reconstruction Claim" is defined in the Agreement as:

> [T]he Owner's [i.e., Westage's] action against Highlands Insurance Company (the "Insurer") for ... failing to (1) make complete payment to Owner of the amounts due to the Contractor [i.e., Inrecon] for the Work it has substantially performed, as more fully described in the Inrecon estimate set forth at Tab 1 of the NFA Estimate, invoices submitted by Contractor to Owner documenting additional Work performed, and as evidenced by the certificates of occupancy and substantial completion.....

[*See* Settlement Agreement, Defendant's Ex. B, part 2, p. 2.]

As indicated, pursuant to the Agreement, Westage assigned its right in the Reconstruction Claim to Inrecon. In per-

---

**2.** Because The Don Allen Agency is not a party to the suit before this Court, Inrecon has not made any allegations regarding Don Allen's citizenship. However, from the complaint filed by Westage in New York state court (see discussion *infra*), it appears that The Don Allen Agency is a citizen of New York.

tinent part, the Agreement provided as follows:

> In consideration of the releases attached and incorporated herein as Exhibits "A" and "A–1," and other good and valuable consideration, *Owner hereby assigns to Contractor, with such assignment to become effective 30 days after the date of execution of this Agreement, all of Owner's right, title and interest in and to the Reconstruction Claim. At that time, Contractor shall succeed to all of Owner's rights and interests with respect to the Reconstruction Claim, including the right to prosecute a separate, independent action against Insurer for the Reconstruction Claim or to move to intervene in the Coverage Action [i.e., the New York state court action]* . . . .

*Id.*

Pursuant to the Agreement, Inrecon filed the instant four-count action on April 10, 2002 against the Highlands Insurance Company in this court seeking payment for the work it performed on the Westage condominiums. In its Complaint, Inrecon seeks recovery under four theories— breach of contract (Count 1); as a third-party beneficiary (Count II); misrepresentation (Count III); and quasi-contract (Count IV).

Defendant responded to Inrecon's Complaint by filing the instant Motion to Dismiss. In this motion, Defendant first claims that this Court should abstain from exercising its jurisdiction over this matter and dismiss Plaintiff's Complaint pursuant to the *Colorado River* [3] doctrine. Second, Defendant argues that this case should be dismissed because the Plaintiff has failed to join the Don Allen Agency, which it claims is a necessary and indispensable party.

## III. DISCUSSION

### A. COLORADO RIVER ABSTENTION

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the United States Supreme Court determined that a federal district court may properly dismiss an action based upon "considerations of wise judicial administration, giving regard conservation of judicial resources and comprehensive disposition of litigation." In that case, Colorado had enacted legislation which divided the State into seven water divisions, in each of which a procedure was established for the settlement of water claims on a continuous basis. The state procedure provided for a state engineer to administer the distribution of state waters.

Seeking adjudication of reserved rights claimed on behalf of itself and certain Indian tribes, as well as rights based on state law, in waters in certain rivers in one of Colorado's water divisions, the United States, which had previously asserted non-Indian reserved water rights in three other state water divisions, brought an action in the United States District Court against some 1,000 water users. The Government sought appointment of a water master to administer any waters decreed to the United States.

Shortly after the federal suit was commenced, one of the defendants in that suit filed an application in the state court for Division 7, seeking an order directing service of process on the United States in order to make it a party to proceedings in Division 7 for the purpose of adjudicating all of the Government's claims, both state and federal. Several defendants and intervenors in the federal proceeding then

---

**3.** *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

filed a motion in the District Court to dismiss. The District Court, granted the motion stating that the doctrine of abstention required deference to the proceedings in Division 7.

The Supreme Court, although disagreeing with the District Court's reliance on the doctrine of abstention, found that dismissal was proper. The Supreme Court's explanation of its ruling has come to be known as "the *Colorado River*" doctrine:

> ... [T]here are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts. These principles rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation. Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction. As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation. This difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them. Given this obligation, and the absence of weightier considerations of constitutional adjudication and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention.

The former circumstances, though exceptional, do nevertheless exist.

> It has been held, for example, that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts. This has been true even where the Government was a claimant in existing state proceedings and then sought to invoke district-court jurisdiction under the jurisdictional provision antecedent to 28 U.S.C. § 1345. In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums. No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. Only the clearest of justifications will warrant dismissal.

424 U.S. 800, 817–19, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (citations and some punctuation omitted).

 As the *Colorado River* Court observed, while there may be times when a federal court should abstain from exercising its jurisdiction, this is the exception and not the rule. 424 U.S. at 813, 96 S.Ct. at 1244. "[T]he doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of the District court to adjudicate a controversy properly before it." *Id.* at 813–14, 96 S.Ct. at 1244. Federal courts may only abstain from this "virtually unflagging" obligation when "considerations of wise judicial administration, giving regard to conservation of judi-

cial resources and comprehensive disposition of litigation" overcome this "strong presumption." *Id.* at 817, 96 S.Ct. at 1246. "Abdication of the obligation to decide cases can be justified under this doctrine only in exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Id.* at 813, 96 S.Ct. at 1244.

Guided by the foregoing general principles, the Court turns to Defendant's motion to dismiss in this case.

### 1. *The presence of parallel state court proceedings.*

■■■ To determine whether application of the *Colorado* River doctrine is appropriate, the Court must first determine if there is a "parallel" state court proceeding. *LaDuke v. Burlington Northern Railroad Co.,* 879 F.2d 1556, 1558 (7th Cir.1989). The appropriate consideration is whether the two cases are *currently* parallel, not whether one could be modified so as to make the cases identical. *Crawley v. Hamilton County Comm'rs,* 744 F.2d 28, 31 (6th Cir.1984).

The first indication that the two cases presented here are not "parallel" is that the parties are distinct. *Id.; see also Trent v. Dial Medical,* 33 F.3d 217, 223 (3rd Cir.1994), *Woods Corporate Associates v. Signet Star Holdings Inc.,* 910 F.Supp. 1019, 1027 (D.N.J.1995). Inrecon is not a party to the state court dispute and Westage Condominiums is not a party to the federal dispute.

Furthermore, as Inrecon points out, the two disputes deal with entirely separate causes of action. In Inrecon's suit in this court, there is a claim for payment for work performed under an insurance contract. Westage's current state court claim is for money Westage allegedly expended to meet municipal code upgrade requirements. Although it is true that Westage's

first cause of action in the New York state court Complaint was for recovery from Highlands insurance for the work that was done to repair the fire damage, there is no dispute that this claim was assigned in its entirety to Inrecon almost immediately after the state court complaint was filed on September 28, 2001. Therefore, Westage's first claim in the state court action no longer existed when Inrecon filed this action on April 10, 2002. The only remaining claims in the New York state court action that remained when Inrecon filed its action in this Court were Westage's claims against the Don Allen Agency pertaining to additional insurance covering the cost of municipal upgrades; no claims remained which pertained to the fire and the subsequent repair work done on buildings 600 and 700.

Furthermore, even if a fire had never occurred, Westage's claims in counts 2 through 4 of its state court complaint would be unchanged as they are based on a duty the insurance broker allegedly had to ensure that Westage was provided with adequate coverage to cover municipal code upgrades. All relevant parties are in agreement that the insurance policy has no express provisions that cover work relating to municipal code upgrades, and there has been no claim made in the federal court complaint pertaining to work for municipal upgrades.

The foregoing makes clear that with respect to Inrecon's federal action before this Court, there is no "parallel" state court proceeding

■■ However, even assuming, *arguendo,* that there is a parallel state court proceeding, or that it is appropriate to consider the state court proceeding as parallel so long as it may be amended in a manner to make it identical, the *Colorado River* doctrine factors do not weigh in

favor of this court abstaining from its duty to adjudicate this controversy.

## 2. *The Abstention Factors.*

■ From *Colorado River*, federal courts have extrapolated six factors that may be weighed when considering abstention: (1) whether federal or state law provides the basis for decision of the case; (2) whether either court has exercised jurisdiction over any res or property; (3) whether the federal forum is less convenient to the parties; (4) avoidance of piecemeal litigation; (5) the order in which jurisdiction was obtained; and (6) the state court's ability to protect federal rights. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 15–16, 103 S.Ct. 927, 936–37, 74 L.Ed.2d 765 (1983), *Heitmanis v. Austin*, 899 F.2d 521, 527 (6th Cir.1990); *see also Crawley, supra*, 744 F.2d at 31 (taking note of the first five listed factors). Perhaps most importantly, "the decision whether to dismiss a federal action because of parallel state-court litigation *does not* rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with *the balance heavily weighted in favor of the exercise of jurisdiction.*" *Cone, supra*, 460 U.S. at 16, 103 S.Ct. at 937 (emphasis added).

■ Considering the first factor, it is clear that there is no federal question involved in the dispute between Inrecon and Highlands, it is merely a state law contractual claim. This however does not weigh heavily in favor of abstention. *Cone*, 460 U.S. at 26, 103 S.Ct. at 942 ("Although in some rare circumstances the presence of state-law issues may weigh in favor of that surrender ... the presence of federal law issues must always be a consideration weighing against surrender."). Furthermore, routine contract and tort issues are not among the rare and exceptional circumstances that would justify abstention

of jurisdiction. *Focus Radio, Inc. v. Summit Radio, Inc.*, 853 F.Supp. 252, 255–56 (E.D.Mich.1994). Thus, the first factor does not weigh in favor of abstention.

The second factor—jurisdiction over any *res* or property—does not apply to this case.

The third factor, convenience to the parties, is also insufficient to warrant abstention. Ultimately, this factor cuts both ways as it is equally inconvenient for the Plaintiff, a Michigan company, to litigate in New York as it is for the Defendant, an Iowa company, to litigate in Michigan. While the Defendant is correct in noting that the repair work was done in New York, this is a relatively minor inconvenience in the progress of this trial, and does not rise to the level of hardship that would justify abstention. *See Focus Radio, supra*, 853 F.Supp. at 256 (refusing to abstain from exercising jurisdiction in a case where an Indiana corporation, in a contract dispute controlled by Indiana law, with the majority of potential witnesses, documents and records in Indiana, was forced to litigate in federal court in Detroit, Michigan).

The concern over piecemeal litigation is equally unfounded. First, the suit in New York does not concern the same issues that are presented to this court. Because of Westage's assignment of its breach of contract claim against Highlands, it is no longer able to pursue that claim in New York state court for the money they allege is owed to them for the cost of rebuilding the structures after the fire. The only party that may pursue those claims is Inrecon. The only claims remaining in the New York action are not present in the instant federal action. In the event that either Plaintiff were to prevail in either suit, there would be no risk that a contradictory result could be obtained in the other forum as they are separate and dis-

tinct causes of action against totally distinct parties, that do not overlap in any of their elements.

■ Even if the causes of action were found to be somehow identical, this again does not counsel in favor of abstention. "Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the *same matter* in the federal court having jurisdiction." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246 (internal citations omitted) (emphasis added). The circumstances in the *Colorado River* case provided the type of compelling and exceptional circumstances that warranted a concern over piecemeal litigation. There, Congress had passed legislation specifically concerned with piecemeal litigation of water rights in the southwest. *Colorado River*, 424 U.S. at 819, 96 S.Ct. at 1247. In contrast, this case presents nothing more than a routine contractual dispute that is far removed from the dangers of piecemeal litigation present in adjudicating water rights. *See Focus Radio*, 853 F.Supp. at 256 ("Concurrent parallel actions alone do not present the danger of piecemeal litigation needed in order to grant abstention.").

Considering the fifth factor, the order in which jurisdiction was obtained, it is true that the proceedings in state court were commenced first. However, the Supreme Court has counseled that the filing date is not what matters. "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Cone*, 460 U.S. at 21, 103 S.Ct. at 940. Neither party has submitted any evidence, affidavits, or representations that the state suit has proceeded beyond the discovery stage. This is essentially the same point the federal suit has reached. Thus, this factor weighs against granting abstention, not for it.

The last factor is not relevant to this dispute as there are no federal rights at issue.

■ Looking beyond the "mechanical checklist" also does not yield any reasons to grant abstention. This case is relatively routine, with no novel questions of law. Defendant has not offered any other factors or reasons that this court should appropriately consider for purposes of this abstention motion. Furthermore, "doubts as to whether a particular factor exists in the abstention determination should be resolved against a stay, for only the clearest of justifications will warrant abstention." *Focus Radio*, 853 F.Supp. at 256; *see also Colorado River*, 424 U.S. at 819, 96 S.Ct. at 1247.

Based upon the foregoing, the Court finds no merit in Defendant's *Colorado River* abstention argument for dismissal of this action.

## B. *JOINDER OF THE DON ALLEN AGENCY*

■ Defendant Highlands also argues in its Motion to Dismiss that the Don Allen Agency, the insurance broker that procured the policy for Westage from Highlands, is a necessary and indispensable party, and that Fed. R. Civ. Pro. 19(a) requires dismissal of this action. Rule 19 provides a three-part test to determine if a party is necessary and indispensable to the action. *Professional Hockey Club Central Sports Club of the Army v. Detroit Red Wings, Inc.*, 787 F.Supp. 706, 712 (E.D.Mi. 1992). The first step is governed by the procedure set forth in Rule 19(a):

(a) Person to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be ac-

corded among those already parties, or (2) the person claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

The second step is to join the party if feasible. *Keweenaw Bay Indian Community v. State of Michigan*, 11 F.3d 1341, 1345 (6th Cir.1993). If joinder is not feasible because of issues of personal jurisdiction or venue, then the court proceeds to an analysis of the four factors outlined in Rule 19(b):

> First, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the Plaintiff will have an adequate remedy if the action is dismissed.

In deciding this issue with respect to the Don Allen Agency, there is only question this Court must resolve: is the Don Allen Agency implicated in any way regarding the Reconstruction Claim?

Neither party makes any claim that the Don Allen Agency has anything to do with the Reconstruction Claim. There is only the claim that the Don Allen Agency has something to do with Westage's claim that it was sold insufficient insurance because the policy did not include any coverage for municipal upgrades. Quite simply, as discussed earlier, the Reconstruction Claim that is being pursued in federal court is entirely separate and distinct from the municipal upgrade claims that are being pursued in state court. The Reconstruction Claim deals with sums that may be owed to Inrecon, as assignee of Westage, for work done to repair buildings damaged in a fire that was covered by a fire insurance policy. In light of the Reconstruction Claim's scope, the Don Allen Agency is completely irrelevant. Don Allen did nothing more than broker the sale of the insurance policy.

The only court that has been presented with the question of whether the policy sold to Westage was insufficient, or if a duty owed to Westage was not kept concerning insurance coverage for municipal upgrades, is the New York state court. The Don Allen Agency is a named defendant in that suit. Therefore, the Court rejects Defendant's joinder claim.

## IV. CONCLUSION

For all of the stated above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss this action be, and hereby is, DENIED.